FILED
AUG 16 2013
CLERK, US DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**UNITED STATES OF AMERICA,**

**v.** **CRIMINAL ACTION NO. 2:12cr105**

**EDWARD J. WOODARD,**

**Defendant.**

***MEMORANDUM OPINION AND ORDER***

Before the Court is Defendant Edward J. Woodard's Motion for a Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(c) and Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33. (ECF Nos. 456 and 458). The Defendant and the Government have fully briefed this matter and it is now ripe for disposition. For the reasons stated herein, Defendant's Motions are **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 11, 2012, the Government filed a twenty-five (25) count Indictment against Defendants Edward J. Woodard, Simon Hounslow, Stephen G. Fields, Troy Brandon Woodard ("Brandon Woodard"), Thomas Arney, and Dwight Etheridge. On December 20, 2012, a federal grand jury returned a twenty-six (26) count Superseding Indictment against the Defendants. Specifically, the Superseding Indictment charged Defendant Edward Woodard with Conspiracy to Commit Bank Fraud (18 U.S.C. § 1349), False Entry in a Bank Record (18 U.S.C. §§ 1005 & 2), False Statement to a Financial Institution (18 U.S.C. §§ 1014 & 2), Unlawful Participation in a Loan (18 U.S.C. § 1005 & 2), Bank Fraud (18 U.S.C. §§ 1344 & 2), and Misapplication of

Bank Funds (18 U.S.C. § 656 & 2).

On March 19, 2013, a jury trial commenced in the United States District Court for the Eastern District of Virginia, before the Honorable Raymond A. Jackson. Trial in this case lasted approximately ten weeks. At the close of the Government's case, Defendant moved for a judgment of acquittal on all counts, pursuant to Federal Rule of Criminal Procedure 29(a). The Court denied Defendant's motion. On May 14, 2013, at the close of all the evidence, Defendant renewed the motion for judgment of acquittal. The Court again denied the motion and submitted all counts to the jury. On May 24, 2013, the jury returned a verdict finding Defendant Edward Woodard guilty of Conspiracy to Commit Bank Fraud in violation of 18 U.S.C § 1349, one count of False Entry in a Bank Record in violation of 18 U.S.C. § 1005, four counts of Unlawful Participation in a Loan in violation of 18 U.S.C. § 1005, two counts of False Statements to a Financial Institution in violation of 18 U.S.C § 1014, two counts of Misapplication of Bank Funds in violation of 18 U.S.C § 656, and one count of Bank Fraud in violation of 18 U.S.C § 1344. Defendant now moves the Court to grant a new trial and judgment of acquittal on all counts.

## II. LEGAL STANDARD

Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29") provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal" where the defendant has successfully challenged the sufficiency of the evidence used to convict him. FED. R. CRIM. P. 29(c)(2). "A defendant challenging the sufficiency of the evidence to support his conviction carries a heavy burden." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation omitted). In reviewing a Rule 29 challenge to a conviction, a court inquires whether "*any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *United States v. Johnson*, 55 F.3d 976, 979 (4th Cir. 1995) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Deference to the trier of fact requires that the court "construe the evidence in the light most favorable to the Government, assuming its credibility, drawing all favorable inferences from it, and taking into account all the evidence, however adduced." *Johnson*, 55 F.3d at 979.

In its sufficiency review, a court considers both circumstantial and direct evidence. *United States v. Martin*, 523 F.3d 281, 289 (4th Cir. 2008); *United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989) (noting "circumstantial evidence is treated no differently than direct evidence, and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence"). However, assessing the credibility of witnesses is within the sole province of the jury. *See Johnson*, 55 F.3d at 979; *United States v. Uzenski*, 434 F.3d 690, 700 (4th Cir. 2006). The uncorroborated testimony of a single witness may be sufficient to sustain a guilty verdict; even if that witness is an accomplice, co-defendant, or informant. *See United States v. Wilson*, 115 F.3d 1185, 1189-90 (4th Cir. 1997); *United States v. Manbeck*, 744 F.2d 360, 392 (4th Cir. 1984); *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983).

Federal Rule of Criminal Procedure 33 ("Rule 33") provides, in part, that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a); *Arrington*, 757 F.2d at 1485 (citations omitted) ("When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial"). In deciding a motion for a new trial, a court not constrained by the requirement that it view the evidence in the light most favorable to the government and thus, may evaluate the credibility of the witnesses. However, the United States Court of Appeals for the Fourth Circuit ("Fourth

Circuit") instructs that a reviewing court "should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *United States v. Smith*, 451 F.3d 209, 216-17 (4th Cir. 2006) (citation omitted).

## III. DISCUSSION

### A. Motion for Judgment of Acquittal

Defendant challenges the sufficiency of the evidence used to convict him, arguing that "even when viewed in the light most favorable to the Government" the evidence produced at trial cannot sustain the jury's verdict. Def.'s Mot. for J. of Acquittal 1. The essence of the Government's case at trial was a conspiracy, the purpose of which was to hide the deteriorating financial condition of the Bank. The Government alleged that the conspiracy involved reciprocal relationships between Bank insiders and certain troubled borrowers whereby such troubled borrowers performed favors for Bank insiders in exchange for preferential treatment. Over the course of the ten week trial, the Government presented the testimony of 46 witnesses, including co-conspirators, Bank employees, customers, regulators, and members of the Bank's Board of Directors. The Government also presented over 600 exhibits, including, promissory notes, purchase agreements, commercial credit reviews, credit/debit tickets, letters, bank statements, photographs, and Defendant's own emails to support the charges.

*i. Count 1: Conspiracy to Commit Bank Fraud*

As the Bank's former President and Chief Executive Officer, Defendant was at the center of the conspiracy to defraud the Bank. The Government called multiple key co-conspirators and witnesses who offered live testimony about the specific details of Defendant's role in the conspiracy and improper transactions. Defendant's co-conspirators Thomas Arney, Eric

Menden, George Hranowskj, and Jeremy Churchill all testified to the extensive nature of Mr. Woodard's involvement in and facilitation of uncollateralized loans, straw purchases, and *quid pro quo* transactions.

The Government also alleged that, as part of the conspiracy, Defendant arranged preferential treatment for his son, Brandon Woodard. The jury saw emails from Brandon Woodard referencing a "...[huge mess] due to us having been given these loans...since none of us could qualify for them." Gov't Ex. 16C. The jury also saw minutes from meetings of the Board of Directors showing that Defendant either voted on or omitted material information regarding multiple loans in which he and his co-conspirators had a vested interest. The Government further introduced numerous commercial credit reviews, promissory notes, and wire transfer records as documentary evidence of Defendant's activities.

Despite Defendant's contentions, the Government need not present a "smoking gun" or otherwise prove the existence of an express agreement in order to provide sufficient evidence of a conspiracy. In this Circuit, it is well established that the Government need not show that the agreement was explicit. *United States v. Burgos*, 94 F.3d 849, 860 (4th Cir. 1996) (citing *Iannelli v. United States*, 420 U.S. 770, 777 n.10 (1975)); *see also United States v. Morsley*, 64 F.3d 907, 919 (4th Cir. 1995) (holding that there need not be evidence of a specific agreement in order to sustain a conspiracy conviction), *cert. denied,* 516 U.S. 1065 (1996). Further, a conspiracy can be inferred from the facts and circumstances of the case. *Burgos*, 94 F.3d 849, 861 (citation omitted); *see United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989) ("circumstantial evidence . . . may be sufficient to support a guilty verdict . . ."). The Court FINDS that, based on the testimonial and documentary evidence, the jury had sufficient evidence upon which to base its finding of guilt on the conspiracy charge.

*ii. Count 8: False Entry in a Bank Record*

The Government charged Defendant with False Entry in a Bank record, pursuant to 18 U.S.C. § 1005, because he was alleged to have falsely indicated in Bank records that the Board of Directors approved three loans totaling $11 million to customer Charlie Falk at a meeting on April 15, 2008. Defendant moves to set aside the jury's verdict on this count, arguing that the Government failed to provide sufficient evidence of his intent to defraud the Bank because the loan was later approved via telephone poll. Defendant conceded, and several other witnesses confirmed, that the loan was not approved at the original meeting. The Government also provided minutes from the April 15, 2008 meeting to support this charge. Gov't. Ex. 1C-6. During his testimony, Defendant claimed that the loan was approved via a telephone poll on June 27, 2008 and offered an entry from his day planner as proof. The Government called Board member Kenneth Young, who testified that he did not recall approving the loan via telephone poll. Also, on cross-examination, the Government presented evidence that Defendant's day planner entry had been altered after he learned of an investigation into the Bank's practices. *See* Gov't. Ex. 1H-10 and Def. Ex. 86. The jury had adequate evidence from which it could conclude that Defendant was guilty of providing a false entry in a bank record.

*iii. Count 12: Unlawful Participation in a Loan*

Defendant was convicted of unlawfully participating in a loan to Thomas Arney for the purchase of Defendant's personal condominium. Defendant argues that he lacked the requisite intent to defraud. The Government presented substantial evidence to support a finding of guilt on this count. Thomas Arney testified that he did not want to purchase the property, but was pressured to do so by Defendant's co-conspirator. Further, former Bank employees testified that when the Board voted on the loan, Defendant did not disclose that it would be used to purchase

his personal property. The Government introduced the Commercial Credit Review attached to the minutes from the Board meeting related to the loan. The Commercial Credit Review failed to mention Arney was purchasing Defendant's personal condominium. Gov't. Ex. 12E. The jury also saw evidence that Defendant and his wife received $52,887.45 from the transaction. Gov't. Exs. 12F, 12H. The jury had sufficient evidence from which it could conclude that Defendant was guilty of unlawfully participating in a loan.

*iv. Counts 13-15: False Statements to a Financial Institution and Misapplication of Bank Funds*

Defendant's primary legal argument is that he lacked the criminal intent necessary to support a finding of guilt on Counts 13, 14, and 15. Counts 13 through 15 pertain to more than $500,000 in loans the Bank made to Thomas Arney's children, Ryan and Ashley Arney. The Government alleged that Defendant caused the loans to be made knowing that Arney's children were in fact nominee borrowers. Defendant relies on the Fourth Circuit's holding in *United States v. Blackwood*, 735 F.2d 142 (4th Cir. 1984) to support his claim that Ryan and Ashley Arney were not nominee borrowers and Defendant had no knowledge that they were not in fact the true borrowers. In *Blackwood*, the Fourth Circuit noted that "where the named debtor is both financially capable and fully understands that it is his responsibility to repay, a loan to him cannot— *absent other circumstances* —properly be characterized as sham or dummy, even if bank officials know he will turn over the proceeds to a third party." *Blackwood*, 735 F.2d at 145 (quoting *United States v. Gens,* 493 F.2d 216 (1st Cir.1974)). However, the Fourth Circuit also noted that

> those [transactions] in which bank officials knew that the named debtor was financially incapable of paying the loan...the loans formally being made could be characterized as "sham" or "dummy" loans, because there was little likelihood or expectation that the

> named debtor would repay. The knowing participation of bank officials in such loans could consequently be found to have a "natural tendency" to injure or defraud their banks and thus constitute willful misapplication within the meaning of § 656.

*Blackwood*, 735 F.2d at 145. Further, the misapplication of bank funds statute applies to cases where "bank officials assured the named debtor, regardless of his financial capabilities, that they would look for repayment only to the third party who actually received the loan proceeds… [and] the debtor allowed only his name to be used, enabling the bank officials to grant a de facto loan to a third party to whom the bank was unwilling to grant a formal loan." *United States v. Gens*, 493 F.2d 216, 222 (1st Cir. 1974); *United States v. Luke,* 701 F.2d 1104, 1107 (4th Cir.1983) (adopting the categories established in *Gens*).

In the present case, the Government presented both documentary and testimonial evidence to support the finding of guilt. Thomas Arney testified that the loans at issue were in fact for him, his children had no involvement in obtaining them, and his children were at all times incapable of guaranteeing and paying the loans. The Government also prepared and submitted summary charts to demonstrate that the disposition of these loans was to Thomas Arney, not his children. Mr. Arney's bookkeeper also testified that Ryan Arney was in college and Ashley Arney was working as a waitress when these loans were funded. Thomas Arney stated that Defendant knew all of the above facts and that Defendant had even frequented the restaurant where the Arney children worked. Further, Arney testified that Defendant was certainly involved in the nominee loans because Arney could not receive any funds from the Bank without Defendant's approval. Accordingly, the jury's verdict on Counts 13-15 is supported by sufficient evidence.

*v. Counts 16-18: Unlawful Participation in a Loan*

The jury convicted both Defendant Edward Woodard and his son Brandon Woodard of

Unlawful Participation in a Loan on Counts 16-18. On these counts, the Government alleged that Edward Woodard pressured two troubled borrowers to "bail out" his son by purchasing Brandon Woodard's failed investment properties and personal condominium using loans from the Bank. The Government asserted that these loans were part of the $40 million portfolio to troubled borrowers Eric Menden and George Hranowskj that contributed to the Bank's collapse. Menden and Hranowskj testified that these were not arms-length transactions because they never negotiated the price of the properties and purchased them to further the reciprocal relationship. Menden and Hranowskj also testified to Defendant's in-depth involvement in the conspiracy that led them to expect Bank favors in return for purchasing properties at Defendant's request. The jury heard from members of the Board who asserted that when voting on at least two of the loans, Defendant did not inform them that his son owned the properties being purchased. This testimony was supported by the Commercial Credit reviews for at least two of the loans, which failed to mention that Brandon Woodard's properties were being purchased with these loans. Gov't. Exs. 16D. The jury then saw evidence that Defendant Brandon Woodard earned nearly $70,000 from one of the transactions. Gov't Ex. 18K.

Defendant testified that had no involvement in these loans and did not "cause" them to be made, but the jury saw emails between father and son regarding the process and status of the loans. *See also* Gov't. Exs. 18I1-2 (containing emails between Edward and Brandon Woodard on the status of loans to Menden and Hranowskj). The jury had sufficient evidence from which it could reasonably conclude that Defendant was guilty on Counts 16-18.

*vi. Count 20: Bank Fraud*

Defendant was convicted of Bank Fraud for instructing contractor Kevin Glen to "wrap" (or fraudulently bill), the costs associated with the renovation of his son Brandon's home into the

costs related to the construction of the Bank's Suffolk branch. Defendant contends that he did not "cause" Kevin Glen to commit bank fraud and Glen alone was responsible for the fraudulent billing. The Government presented sufficient evidence to rebut this claim and convict Defendant on Count 26. Testifying under a grant of immunity, Kevin Glen told the jury that at a September 13, 2008 meeting, Defendant explicitly instructed him to represent the costs of Brandon Woodard's home renovation as costs associated with construction of the Bank branch. Mr. Glen's testimony in and of itself is sufficient to support a finding of guilt. *See United States v. Wilson*, 115 F.3d 1185, 1189-90 (4th Cir. 1997); *United States v. Manbeck*, 744 F.2d 360, 392 (4th Cir. 1984); *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983). This is true despite Defendant's arguments about Kevin Glenn's credibility because the jury is the ultimate arbiter of credibility. *See Johnson*, 55 F.3d at 979; *United States v. Uzenski*, 434 F.3d 690, 700 (4th Cir. 2006). The jury also could have based its finding of guilt on the circumstantial evidence gleaned from the bills for Brandon Woodard's home renovations that drastically reduced after Defendant was alleged to have instructed Kevin Glenn to fraudulently bill them to the Bank. *See* Gov't. Exs. 26P, 26Z, 26EE. The jury had sufficient evidence to support its finding of guilt on this charge.

*vii. Count 25: Misapplication of Bank Funds*

Defendant was also convicted of Misapplication of Bank Funds for causing the Bank to fund an unsecured $250,000 loan to his co-conspirator Dwight Etheridge's company and using that loan to make interest payments on other loans. Defendant again argues that he lacked the requisite intent and this loan was "just like any other loan." Def.'s Mot. for J. of Acquittal 15. However, the Government presented ample compelling evidence to support this charge. Jeremy Churchill, the loan officer for this transaction, testified that he met with Defendant and Etheridge

and informed them both of Mr. Etheridge's fraud related to an ongoing construction project. Churchill testified that, after the meeting, Defendant instructed him to fund the $250,000 loan and tell Etheridge to transfer the loans out of the Bank before using the proceeds to make overdue loan payments. To support this contention, the Government provided documentary evidence, in the form of the Commercial Credit Review, promissory note, wire transfer records, and a copy of the check used to make the overdue loan payments. Gov't. Exs. 25B, 25C, 25D, 25E. The jury had sufficient evidence to support its finding of guilt on this charge.

Lastly, Defendant testified at trial and spent considerable time rebutting each of the charges in the Superseding Indictment. As final arbiters of the truth, the jury weighed the credibility of Defendant's claims against the evidence supporting his guilt. Based on the evidence, a rational jury could infer that, under the totality of the circumstances, Defendant did commit the crimes of which he was charged. Accordingly, the Court will not disturb the jury's verdict.

Defendant previously moved for a Judgment of Acquittal at the close of the Government's evidence and before this case was sent to the jury. The Court heard lengthy arguments in support of Defendant's Motion. Defendant offers no new persuasive grounds for the instant Motion. The Court FINDS that Defendant has failed to establish that there was insufficient evidence to support his conviction. Accordingly, his Motion for Acquittal is **DENIED**.

### B. Motion for New Trial

A new trial is a drastic remedy intended for the rare case. *United States v. Chin*, 181 F.3d 92 (4th Cir. 1999) (unpublished). A district court should exercise its discretion to grant a new trial "sparingly" and "only when the evidence weighs heavily against the verdict." *United States*

*v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997); *United States v. Arrington,* 757 F.2d 1484, 1486 (4th Cir. 1985).

After thoroughly reviewing all the evidence and considering the arguments from both parties, the Court **FINDS** that the interests of justice do not require a new trial. *See Arrington,* 757 F.2d at 1486. As discussed above, abundant evidence supports the jury's verdict. Accordingly, Defendant's Motion for a New Trial is **DENIED**.

## IV. CONCLUSION

The Court conducted a lengthy trial in this case, during which the Government presented the testimony of numerous witnesses and introduced hundreds of documents. The jury had sufficient evidence to support its guilty verdict on all counts. For the reasons stated above, Defendant's Motions for a Judgment of Acquittal and New Trial are **DENIED.** The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**

/s/
**Raymond A. Jackson**
**United States District Judge**

Norfolk, Virginia
August 15, 2013